UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:24-CV-00212-FDW-SCR

| | |
|---|---|
| TY MCBRIDE et al, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| HANK SACKS et al, | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendant Partisan Arts, Inc.'s ("Partisan") Motion to Dismiss or, in the alternative, for a More Definite Statement, (Doc. No. 15); and Defendants Henry "Hank" Sachs' ("Sachs") and Selmona LLC's ("Selmona") Motion to Dismiss or in the alternative Motion for a More Definite Statement, (Doc. No. 18) (collectively, "Motions to Dismiss or, in the alternative, Motions for a More Definite Statement"). This matter has been fully briefed, (Doc. Nos. 12, 15-1, 18-1, 21, 22, 23), and is ripe for ruling. For the reasons set forth below, Defendants' Motions are DENIED.

I. BACKGROUND

Plaintiff Ty McBride ("McBride") is the manager of Mason Lane Entertainment LLC ("Mason Lane"), a Delaware corporation with its principal place of business in North Carolina. (Doc. No. 12, p. 1.) Mason Lane is a co-plaintiff in this matter. (Doc. No. 12, p.1) Sacks is an employee or agent of Partisan, a California corporation, as well as Selmona, a Maryland limited liability company. (Doc. No. 12, p. 1.) Sacks, himself, is a citizen of the District of Columbia (Doc.

1

No. 12, pp. 1–2.) Plaintiffs filed this action asserting claims for wrongful interference with contract right ("Claim One") and defamation ("Claim Two"). These claims arise out of the following fact pattern, as pleaded in McBride's Amended Complaint.

McBride has, for years, "operated music concerts" in the Charlotte area, responsible for attracting talent and scheduling events for venues around the city. (Doc. No. 12, p. 2.) McBride performs these services through Mason Lane. (Doc. No. 12, p. 2.) Prior to the initiation of this litigation, Plaintiffs were approached by representatives of then-unopened outdoor amphitheater AMP Ballantyne ("AMP"), its management company NOW Amphitheater Management LLC ("NOW"), and its primary investor Northwood Office LLC ("Northwood," collectively the "AMP parties"), seeking McBride's expertise in venue management. (Doc. No. 12, p. 2.)

The five parties entered into a partnership wherein Plaintiffs "expended considerable time and provided extensive services" to prepare AMP Ballantyne for its launch. (Doc. No. 12, p. 3.) According to McBride, services rendered were uncompensated, and performed under the partnership agreement in expectation of future gain. (Doc. No. 12, p. 3.) Around June 2023, NOW entered into an Amphitheater Event Management Agreement ("AEMA") with Mason Lane under which Plaintiffs would provide various specialized services, including "securing entertainment for AMP Ballantyne events and setting up and running the food and beverage program for AMP Ballantyne events," in return for a portion of revenue generated through ticket, food and drink, merchandise, and parking sales. (Doc. No. 12, p. 3)

In July 2023, McBride initiated discussions with Sacks to secure a Big Head Todd and the Monsters ("Big Head") concert at AMP. (Doc. No. 12, p. 4.) McBride and Sacks failed to agree on terms, after which Sacks reportedly "became angry and called McBride an amateur." (Doc. No. 12, p. 4.) Sacks then cancelled a band previously scheduled to perform at AMP, which McBride

concludes occurred "because [Sacks] was angry with McBride about the Big Head Todd situation." (Doc. No. 12, p. 4.) McBride alleges Sacks, during a phone conversation with AMP promoter Bobby Hendrix ("Hendrix"), stated he did not trust AMP to schedule shows with Partisan because of McBride, telling Hendrix "AMP Ballantyne was not vetting its promotors or working with seasoned people," purportedly in reference to McBride. (Doc. No. 12, p. 4.) Sacks also stated to Hendrix, among other unspecified accusations, "McBride did not know what he was doing and was an amateur," and "Partisan Arts would not schedule further concerts for Partisan Arts's artists at the AMP Ballantyne if McBride continued to be associated with the venue." (Doc. No. 12, p. 4)

Plaintiffs contend NOW opted to terminate the AEMA and inform McBride it could not move forward with any future commercial partnerships because of Sacks' threat to sever ties with the AMP parties if they continued to associate with McBride. (Doc. No. 12, p. 5.)

Plaintiffs thus filed their Amended Complaint on March 21, 2024, alleging Sacks, Partisan, and Selmona, the latter two operating through their agent Sacks, (1) engaged in tortious interference by inducing the AMP parties to terminate their AEMA with Plaintiffs; and (2) defamed Plaintiffs to individuals associated with the AMP parties by "impeach[ing] McBride in his trade, business, or profession." (Doc. No. 12, p. 5.)

## II. STANDARD OF REVIEW

### A. Rule 12(b)(2)

Rule 12(b)(2) provides for dismissal where the court lacks personal jurisdiction over a particular named defendant. A plaintiff has the burden to prove personal jurisdiction by a preponderance of the evidence. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). A court must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the *prima facie* showing. Id. at 676. Such resolution must construe all relevant pleadings in a light

3

most favorable to the plaintiff, assume the credibility of any affiant, and draw the most favorable inferences for the existence of jurisdiction. Combs, 886 F.2d at 676; see also Mylan Labs., Inc. v Akzo, N.V., 2 F.3d 56, at 59–60 (4th Cir. 1993)).

There are two types of personal jurisdiction: general and specific. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8 & 9 (1984). A court may exercise general personal jurisdiction over a defendant when that defendant is essentially "at home" in the forum. See Daimler AG v. Bauman, 571 U.S. 117, 127 (2014). For a corporate defendant, "at home" will usually be defined as its domicile and principal place of business. See Id. at 137. When general personal jurisdiction does not apply, a court may still exercise specific personal jurisdiction if the plaintiff sufficiently shows: 1) the defendant purposefully availed themselves of the forum and the benefits and protections of its laws, 2) the plaintiff's claim arises from the purposefully availing conduct, and 3) the exercise of jurisdiction would be constitutionally reasonable. See Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009); Bundy v. CitySwitch II, LLC, No. 320CV00618FDWDSC, 2021 WL 4142677, at *3 (W.D.N.C. Sept. 10, 2021).

**B. Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides a lawsuit may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). The Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). For purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the Plaintiff. Priority Auto Grp., Inc. v. Ford Motor Credit Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

The Supreme Court has also opined,

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (citations omitted).

### III. DISCUSSION

Defendant Partisan moves to dismiss Plaintiffs' Amended Complaint pursuant to Rule 8(a), Rule 12(b)(2), and Rule 12(b)(6), and further argues dismissal is warranted because Plaintiffs fail to sufficiently provide notice of which state's law should apply in this matter. (Doc. No. 15-1, pp. 1, 14–15; Doc. No. 22, pp. 2–3.) In the alternative, Partisan also requests this Court enter an Order pursuant to Rule 12(e) requiring Plaintiffs to provide a more definite statement. (Doc. No. 22, pp.

5

2–3.) Defendants Sacks and Selmona move to dismiss Plaintiffs' Amended Complaint for essentially mirrored reasons. (Doc. No. 18-1.)

**A. Personal Jurisdiction**

All Defendants contends this Court lacks personal jurisdiction in this action. As for general personal jurisdiction, no extensive analysis is required. Partisan is, as agreed by all parties, a California corporation; Sacks is a citizen of the District of Columbia; Selmona is a Maryland business. (Doc. No. 12, p. 1.) Plaintiffs do not allege any Defendant is a citizen of North Carolina. As a result, general personal jurisdiction does not apply. Daimler AG, 571 U.S. at 127.

As to specific jurisdiction, a federal district court can only assert personal jurisdiction over a nonresident defendant when two conditions are satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. Bowman v. Curt G. Joa, Inc., 361 F.2d 706, 711 (4th Cir. 1966). North Carolina's long-arm statute has been construed as coextensive with the Due Process Clause, collapsing the statutory and constitutional requirements into a single inquiry over personal jurisdiction. See Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). This single inquiry hinges on the defendant having "minimum contacts" with the forum state, such that exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." See id. (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The appropriateness of exercising personal jurisdiction is a fact specific inquiry and is determined based on the circumstances of each case. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478–79, 485–86 (1985).

A minimum contacts analysis requires a court to consider "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2)

6

whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002).

In the present circumstances, this Court finds the causes of action, those being potential harms befalling a North Carolina citizen for defamation and a contract crafted and meant to be executed in North Carolina, are sufficiently linked to the jurisdiction, fulfilling the second prong of the specific jurisdiction analysis. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (finding there must be "an affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation"). This Court also notes Defendants do not contest the exercise of personal jurisdiction over this matter as unreasonable or unfair, nor does the Court believe *sua sponte* the exercise would be unreasonable or unfair. See Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 113 (1987); Hayward Indus., Inc. v. Ningbo C.F. Elec. Tech Co., No. 3:20-CV-00710-FDW-DSC, 2021 WL 2187953, at *7 (W.D.N.C. May 28, 2021). Thus, the first prong, purposeful availment, is the sole matter of concern as to all Defendants.

To establish purposeful availment, a plaintiff must first show the defendant deliberately reached out beyond its home and its contacts were not "random, isolated, or fortuitous." See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024–25 (2021).[1]

---

[1] When evaluating purposeful availment, the Fourth Circuit has identified several nonexclusive factors to consider, including:(1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted. See, e.g., Sneha Media & Entm't, LLC v. Associated Broad. Co., 911 F.3d 192, 198–99 (4th Cir. 2018).

The second requirement is that a claim "must arise out of or relate to the defendant's contacts" with the forum. Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty., 137 S. Ct. 1773, 1780 (2017). There must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Id. (quoting Goodyear, 564 U.S. at 919 (2011)).

Third, the exercise of jurisdiction over the defendant must be reasonable and fair. Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 113 (1987). The Supreme Court has outlined five factors to consider when determining whether the exercise of personal jurisdiction would be reasonable and fair: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5), the shared interest of the several States in furthering fundamental substantive social policies. Asahi Metal Indus. Co., 480 U.S. at 113; see also, e.g., Bundy, 2021 WL 4142677, at *4–5.[2]

Additionally, a corporation "can purposefully avail itself of a forum by directing its agents or distributors to take action there." See Daimler AG, 571 U.S. at 135. An agency relationship "arises when parties manifest consent that one shall act on behalf of the other and subject to his control." Miller v. Piedmont Steam Co., 528 S.E.2d 923, 926 (N.C. Ct. App. 2000); see also Hayman v. Ramada Inn, Inc., 357 S.E.2d 394, 397 (N.C. Ct. App. 1987) ("Agency has been defined . . . as the relationship which arises from 'the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act'"). "Moreover, in establishing the existence of an actual agency relationship, the evidence must show a principal actually consents to an agent acting on its behalf." Phillips v. Restaurant

---

[2] "Of course, if the court denies a Rule 12(b)(2) motion under the *prima facie* standard, it can later revisit the jurisdictional issue when a fuller record is presented." Sneha Media, 911 F.3d at 196–97.

8

Mgmt. of Carolina, L.P., 552 S.E.2d 686, 695 (N.C. Ct. App. 2001). A given agency relationship "is determined by the nature and extent of control and supervision retained and exercised by the franchisor over the methods or details of conducting the day-to-day operation." Hayman, 357 S.E.2d at 397.

   1. Partisan

Partisan contends its only connection with North Carolina, as plead in Plaintiffs' Amended Complaint, was the discussion between its agent, Sacks, and McBride. (Doc. No. 15-1, p. 13.) Partisan further argues it did not solicit business in North Carolina, but rather McBride initiated communications between the parties. (Doc. No. 15-1, p. 13.) However, Plaintiffs argue, under the standard established in Calder v. Jones, the conduct undertaken by Partisan's agent was intended to harm a North Carolina citizen in North Carolina, creating specific jurisdiction. See Calder v. Jones, 465 U.S. 783 (1984). We need not go so far.

Partisan, through Sacks, purposefully availed itself of the North Carolina market such that personal jurisdiction may be extended. To extend personal jurisdiction, Partisan must have "purposefully directed [its] activities at residents of the forum." Rudzewicz, 471 U.S. at 472. This "purposeful availment" requirement protects defendants from "be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Id. at 474. Specific jurisdiction exists if Partisan opted to avail itself of the privilege of conducting business in North Carolina.

Sacks, being Partisan's alleged employee and agent, had made previous arrangements with AMP, a North Carolina corporation, prior to Sacks' friction with McBride over the Big Head show. As plead, "Sacks then cancelled a show scheduled at the AMP Ballantyne with *another one of the artists Partisan Arts promoted*," which suggests direct previous contacts between Sacks—on behalf of Partisan—and AMP and its partners to arrange performances with Partisan affiliates.

9

(Doc. No. 12, p. 4 (emphasis added).) Because Partisan's agent Sacks previously reached into North Carolina to solicit commerce with the AMP parties, the facts suggest Partisan purposefully availed itself of the present jurisdiction.

   2. Sacks

Defendant Sacks alleges Plaintiffs fail to establish a basis for personal jurisdiction as he is a citizen of the District of Columbia lacking "continuous and systematic" contacts with North Carolina. (Doc. No. 18-1, p. 6 (citing Int'l Shoe Co., 326 U.S. at 317).) This Court finds this unavailing for the reasons discussed above. Sacks, in his capacity as an employee for Partisan, previously engaged in legitimate business in North Carolina, including with the AMP parties, to organize musical performances prior to the Big Head discussion. (Doc. No. 12, p. 4.) This is sufficient demonstration of purposeful availment for this Court to establish personal jurisdiction.

   3. Selmona

Defendant Selmona also alleges Plaintiffs fail to establish a basis for personal jurisdiction over it, being a Maryland corporation. (Doc. No. 15-1, p. 14.) For the same reasons discussed above as regards Partisan, specific personal jurisdiction may be extended over Selmona.

**B. Failure to State a Claim**

   1. Sufficiency of Amended Complaint

Defendants argue "Plaintiffs' Complaint fails to meet the requirements of Rule 8," and presented only a threadbare assertion of facts insufficient to demonstrate either defamation or wrongful interference with contract right." (Doc. Nos. 15-1, p. 6; 18-1, p. 4.) This Court finds Plaintiffs provided sufficient factual allegations to survive a motion to dismiss.

Defendant Partisan argues Plaintiffs' Amended Complaint fails "[a]t the most basic level" to meet the requirements of Rule 8. (Doc. No. 15-1, pp. 5–6.) Likewise, Defendants Sacks and

10

Selmona maintain Plaintiffs' Amended Complaint does not "provide even the most basic information regarding the existence of personal jurisdiction, the mandatory claim elements, or the state or federal law under which the claims purportedly arise." (Doc. No. 18, p. 1.)

A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Williams v. Charlotte-Mecklenburg Hosp. Auth., No. 320CV00242RJCDSC, 2020 WL 12918274, at *3 (W.D.N.C. Aug. 19, 2020), report and recommendation adopted, No. 320CV00242RJCDSC, 2021 WL 5782752 (W.D.N.C. Dec. 7, 2021). Whereas courts in the Fourth Circuit have dismissed complaints for vagueness, there have been under circumstances that contain little or no factual allegations to support the charges. See, e.g., Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990).

An examination of the Amended Complaint demonstrates Plaintiffs offer more than threadbare legal accusations, but rather allege sufficient factual allegations to suggest, in the light most favorable, a legally cognizable injury befell them. While legal conclusions are present, they do not overwhelm the factual allegations to such degree the Amended Complaint is unworkable. As a result, Plaintiffs meet federal pleading requirements.

2. Choice of Law

Defendants contend Plaintiffs failed to provide sufficient notice of which state's law applies to their causes of action. (Doc. Nos. 18-1, p. 5; 15-1, p. 14.) More precisely, Partisan argues Plaintiffs' Amended Complaint "fails to assert which state's law will apply," while Sacks and Selmona contend "Plaintiff failed to plead plausible facts" sufficiently for Defendants to apprehend which state's law applies. (Doc. Nos. 15-1, p. 15; 18-1, pp. 7–8.) This Court disagrees.

A federal court sitting in diversity jurisdiction is compelled to apply the substantive law of the forum state in which it resides, including its choice-of-law rules. Volvo Const. Equip. N. Am.,

Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 599 (4th Cir. 2004). North Carolina will apply the law of the state where the injury occurred. Bondreau v. Baughman, 368 S.E.2d 849, 854 (N.C. 1988) ("Our traditional conflict of laws rule is that matters affecting the substantial rights of the parties are determined by *lex loci*, the law of the situs of the claim."). Thus, under North Carolina law, it is only when "the injury giving rise to . . . [the] claim occurs in another state, [that] the law of that state governs resolution of the substantive issues in the controversy." Id. In the context of a defamation claim, "the place of the harm has traditionally been considered to be the place where the defamatory statement was published, i.e., seen or heard by non-parties." Wells v. Liddy, 186 F.3d 505, 521–22 (4th Cir. 1999). The *lex loci* rule "requires application of the law of the state where the plaintiff has actually suffered harm." M-Tek Kiosk, Inc. v. Clayton, No. 1:15CV886, 2016 WL 2997505, at *12 (M.D.N.C. May 23, 2016) (cleaned up).

In the present matter, Plaintiffs, both citizens of North Carolina, were engaged in a contract with three other North Carolina entities, namely NOW, AMP, and Northwood. (Doc. No. 12, p. 3.) The two harms alleged in Plaintiffs' Amended Complaint stand as (1) the publication of a defamatory statement to Mr. Bobby Hendrix and other "promoters and businesses associated with the AMP Ballantyne," and (2) Defendants' induction of the AMP parties to terminate Plaintiffs' AEMA. (Doc. No. 12, pp. 4–7.) Regarding the former, Sacks' allegedly defamatory statement was published when it was received by Hendrix, that is, heard by a non-party to the case, not when it was uttered by Sacks. Liddy, 186 F.3d at 521–22. While Plaintiffs do not explicitly state Hendrix is a resident of North Carolina or was physically present in the state when he received the call, the Court must draw all reasonable factual inferences in favor of the Plaintiffs when considering a Motion to Dismiss. Ford Motor Credit Co., 757 F.3d at 139. Given Hendrix is a music venue promoter affiliated with several North Carolina entities, this Court can reasonably infer Hendrix is

12

a resident of North Carolina, and the allegedly defamatory statement was, thus, published to a North Carolina citizen. (Doc. No. 12, p. 4.)

Furthermore, the actual injury resulting from Defendants' alleged tortious interference was the termination of the contract, which this Court can also reasonably infer occurred in North Carolina, given the citizenship of each implicated party. (Doc. No. 12, p. 5.) Where Sacks was located or claims citizenship is, thus, inapposite to the choice-of-law question. The Amended Complaint sufficiently pleads the circumstances of Plaintiffs' alleged injuries to establish North Carolina law will control this matter as the location of the harm, which is sufficient to provide notice of which state's law shall apply.

3. Causes of Action

Defendants collectively contend Plaintiffs have failed to sufficiently plead the elements of either tortious interference with contract or defamation and should thus be dismissed. For the reasons below, this Court finds it would be improper to dismiss Plaintiffs' claims at this point.

a. Defamation

To prove a claim of defamation, Plaintiffs must demonstrate: (1) the defendant made false, defamatory statements (2) of or concerning the plaintiff, (3) which were published to a third person, (4) causing injury to the plaintiff's reputation. Boyce & Isley, PLLC v. Cooper, 710 S.E.2d 309, 317 (N.C. Ct. App. 2011). "[T]he words attributed to defendant [must] be alleged 'substantially' *in haec verba*, or with sufficient particularity to enable the court to determine whether the statement was defamatory." Stutts v. Duke Power Co., 266 S.E.2d 861, 866 (N.C. Ct. App. 1980). If a statement cannot reasonably be interpreted as stating actual facts about an individual, it cannot be the subject of a defamation suit." Craven v. SEIU Cope, 656 S.E.2d 729, 732 (N.C. Ct. App. 2008). In North Carolina, "slander *per se*" is "an oral communication to a third

party which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease." Cooper, 568 S.E.2d at 898 (quotation and citation omitted).

"False words imputing to a merchant or businessman conduct derogatory to his character and standing as a businessman and tending to prejudice him in his business are actionable, and words so uttered may be actionable *per se*." Id. at 898. In order to be actionable, "the false words (1) must touch the plaintiff in his special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on his business . . . it is not enough that the words used tend to injure a person in his business." Badame v. Lampke, 89 S.E.2d 466, 468 (N.C. 1955). Truth is an affirmative defense to claims of slander *per se*. Long v. Vertical Technologies, Inc., 439 S.E.2d 797, 801 (N.C. Ct. App. 1994). Additionally, the statement must be fact, not mere opinion, though an individual cannot merely preface an otherwise defamatory statement with couching language such as "in my opinion" and claim immunity from liability. Lewis v. Rapp, 725 S.E.2d 597, 603 (N.C. Ct. App. 2012); see also Milkovich v. Lorain Journal Co., 497 U.S. 1, 16 (1990). Whether a statement constitutes fact or opinion is a question of law for the court to determine. Rapp, 725 S.E.2d at 602; Milkovich, 497 U.S. at 18–19. Statements implying the existence of facts that would justify an opinion constitute "mixed opinions" and are subject still to defamation claims. Swengler v. ITT Corp. Electro-Optical Prod. Div., 993 F.2d 1063, 1071 (4th Cir. 1993). Slander *per quod*, meanwhile, are statements not obviously or facially defamatory, but become so when considered in context; this form is inapposite to the present circumstance. Tyson, 351 S.E.2d at 840.

As alleged, Sacks stated he "didn't trust AMP Ballantyne to schedule shows with Partisan Arts's artists because of McBride," "AMP Ballantyne was not vetting its promoters or working

14

with seasoned people," and "McBride did not know what he was doing and was an amateur." (Doc. No. 12, p. 4.)³ This Court rejects Defendants' argument an ordinary person could find "amateur," in this circumstance, to refer to "one who engages in a pursuit, study, science, or sport as a pastime rather than a profession" or a "devotee, [or] admirer," given the surrounding context and circumstance. (Doc. No. 22, p. 3.) While true "amateur" is not universally synonymous with "incompetent," it would be unreasonable to interpret it in any other manner.⁴ Because these statements, uttered in connection with a business relation, "touch Plaintiff[s] in [their] profession and would be injurious to Plaintiff[s]' business," Plaintiffs have sufficiently alleged facts that give rise to a claim for defamation *per se*. Pfieffer Univ., 2018 WL 2248534, at *4.

Defendants also maintain Sacks' statements were "opinion rather than provable fact," and are therefore not actionable as defamatory. (Doc. No. 22, p. 4.) This Court finds, however, that whether an individual is "seasoned," may "not know what he [is] doing," or whether one is an "amateur," in the context given, represent statements of mixed opinion and fact. The facts underlying the claim McBride was an "amateur" or "did not know" what he was doing are (1) McBride has a lack of experience or competence in his position, and, as a result, (2) McBride cannot perform his duties at the level expected of an individual in his position. (Doc. No. 12, p. 4.) Accusations of a lack of experience, competence, or capacity are not mere insults or opinions, but

---

³ In this context, "vetting," per Merriam-Webster's Dictionary, refers to "evaluating for possible approval or acceptance," and, when employed in this manner, implies AMP failed to examine or identify flaws in McBride's competency. Vetting, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/vetting. Similarly, "amateur," in this context, could only be interpreted by the reasonable person to mean "one lacking in experience and competence in an art or science." Amateur, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/amateur.

⁴ Courts applying North Carolina law have applied a similar standard. Dynamic Campus Sols., Inc. v. Pfeiffer Univ., No. 1:17CV906, 2018 WL 2248534, at *4 (M.D.N.C. Apr. 20, 2018), report and recommendation adopted, No. 1:17CV906, 2018 WL 2248428 (M.D.N.C. May 16, 2018) (finding a letter that staff was 'not competent to perform the services they were assigned to perform' and that [p]laintiff was 'incapable of completing services'" it was obligated to complete was defamatory *per se*); Badame, 89 S.E.2d at 468 (holding an accusation a businessman engaged in "shady deals" was sufficient to constitute slander *per se*); Clark v. Brown, 393 S.E.2d 134, 137 (N.C. Ct. App. 1990) (finding that a comment an attorney was "incompetent" was defamatory *per se*).

15

assertions one is factually unfit for his duties, and are actionable as defamatory statements. See, e.g., Eshelman v. Puma Biotechnology, Inc., No. 7:16-CV-18-D, 2018 WL 11411207, at *7 (E.D.N.C. Oct. 29, 2018), aff'd, 2 F.4th 276 (4th Cir. 2021) ("[Plaintiff's] alleged lack of integrity is not a mere insult."); Swengler, 993 F.2d at 1071 (holding statements implying the existence of a fact are not pure opinion and are actionable as defamation).

Additionally, Defendants Sacks and Selmona argue McBride fails to allege how Sacks' comment on his "amateur" capabilities was published. (Doc. No. 18-1, p. 2.) Publication, in the legal sense, translates to communicated by the defendant to some person or persons other than the individual defamed. Donovan v. Fiumara, 442 S.E.2d 572, 574 (N.C. Ct. App. 1994). Plaintiffs offer sufficient factual allegations to suggest Sacks' statements to Hendrix could have been published.

Thus, this Court finds Plaintiffs have alleged sufficient facts to reasonably infer Defendant Sacks' statements were defamatory *per se*. Therefore, dismissal would be improper.

      b. Wrongful Interference with Contract Right

Defendants contend Plaintiffs' claim of wrongful interference with contract right should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. To succeed on a claim for tortious interference, a plaintiff must demonstrate: (1) a valid contract existed between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knew of the contract; (3) the defendant intentionally induced the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damages to the plaintiff. Childress v. Abeles, 84 S.E.2d 176, 181 (N.C. 1954). Interference with a contract is "justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant, an outsider, are competitors." Embree Constr. Grp., Inc. v. Rafcor, Inc., 411 S.E.2d

16

916, 924 (N.C. 1992) (citing Peoples Sec. Life Ins. Co. v. Hooks, 367 S.E.2d 647, 650 (N.C. 1988)). Moreover, Plaintiffs must plead facts to support the proposition Defendants had knowledge of the contracts at issue and purposeful conduct occurred to induce breach of those contracts. William Ives Consulting, Inc. v. Guardian It Sys., LLC, No. 3:19-CV-00336-GCM, 2020 WL 6495542, at *4 (W.D.N.C. Nov. 4, 2020).

Here, Plaintiffs have sufficiently alleged, and Defendants do not challenge, the existence of a valid contract between Plaintiffs and the AMP parties. Rather, Defendants contend Sacks lacked knowledge of the contract, did not intentionally induce the AMP parties to terminate their contract with Plaintiffs, and did not act "without justification." (Doc. No. 18-1, pp. 11–12.) For the reasons below, this Court finds Plaintiffs plausibly allege Sacks should have had knowledge of a contract between Plaintiffs and the AMP parties, intended to induce the AMP parties to terminate Plaintiffs, and did so without justification.

First, Defendants maintain Plaintiffs do not allege sufficient plausible facts to establish Sacks had any knowledge of the agreement between the AMP parties and Plaintiffs. (Doc. No. 18-1, p. 11.) As plead, however, Sacks was, or should have been, aware that McBride was affiliated with the AMP parties due to his capacity to organize events for the venue; the reasonable mind infers McBride's conduct implied some contractual relationship between McBride and the AMP parties. Reichhold Chemicals, Inc. v. Goel, 555 S.E.2d 281, 290 (N.C. App. 2001) ("Insofar as plaintiff sought to disrupt the relationship between defendant and Imperial, plaintiff's knowledge of that relationship satisfies the knowledge requirement of tortious interference.").

Second, Defendants contend Sacks never intentionally induced the AMP parties to terminate their agreement with Plaintiffs, and that the Amended Complaint offers no allegations Sacks made any purposeful request the AEMA be terminated. (Doc. No. 18-1, pp. 11–12.)

17

Defendants correctly rely on Crockett, and underscore North Carolina courts interpret "induce" as "to move by persuasion or influence[;]" (2) "to call forth or bring about by influence or stimulation [;]" and (3) "to cause the formation of . . . [t]he act or process of enticing or persuading another person to take a certain course of action . . . active persuasion, request, or petition." Inland Am. Winston Hotels, Inc. v. Crockett, 712 S.E.2d 366, 370 (N.C. Ct. App. 2011). Here, Plaintiffs allege Sacks contacted AMP agents and informed them "Partisan Arts *would not* schedule further concerts for Partisan Arts's artists at the AMP Ballantyne *if* McBride continued to be associated with the venue." (Doc. No. 12, p. 5 (emphasis added).) While thin, these allegations are sufficient to infer intent in inducing termination of the agreement.

Third, Defendants argue Plaintiffs fail to sufficiently allege Sacks was not justified in his conduct, and Plaintiffs failed to sufficiently allege Defendant Sacks' malice. (Doc. No. 18-1, pp. 11–12.) While this Court recognizes "competition in business constitutes justifiable interference with another's business relations and is not actionable if carried out in one's own interests and by means that are lawful," that does not suggest one may engage in conduct that seeks to destroy the interests of another party. Latino Commc'ns, LLC v. Norsan Broad. of N. Carolina, LLC, No. 3:11-CV-381-MOC-DCK, 2011 WL 6884232, at *6 (W.D.N.C. Oct. 26, 2011). Indeed, "[t]he privilege [to interfere] is conditional; that is, it is lost if exercised for a wrong purpose. In general, a wrong purpose exists where the act is done other than as a reasonable and bonafide attempt to protect the interest of the defendant which is involved." Kuykendall, 322 N.C. 643, 662 (1988).

The Amended Complaint plausibly alleges Defendants' actions were not merely an attempt to protect their own interests; rather, Plaintiffs sufficiently allege Defendant Sacks actively sought to sabotage the agreement and destroy Plaintiffs' relationship with the AMP parties. See Latino Commc'ns, LLC, 2011 WL 6884232, at *6; see also White v. Cross Sales & Eng'g Co., 629 S.E.2d

898, 901 (N.C. Ct. App. 2006) (holding an "'attempt to protect [his] interests is not equivalent to a demand for the firing' of a business partner's employees," which would stand as unjustified interference). At this early state of the litigation, this Court is not convinced Plaintiffs' claim for tortious interference should be dismissed, as the Amended Complaint plausibly alleges Sacks had or should have had knowledge of a valid agreement between Plaintiffs and the AMP parties, intentionally induced the AMP parties to terminate the agreement, and acted without justification.

## C. Defendants' Motion for a More Definite Statement

Defendants contend Plaintiffs' Amended Complaint is "unintelligible," vague, and ambiguous to the degree a response to the allegations contained therein cannot reasonably be prepared. (Doc. No. 18-1, p. 12; Doc. No. 15-1, pp. 14–15.) Thus, Defendants argue Plaintiffs should be compelled to submit a further Amended Complaint to elucidate potential confusion and provide a more definite statement as to the allegations levied against Defendants. This Court finds the Amended Complaint sufficiently pleaded for Defendants to respond effectively.

Plaintiffs allege two common law claims for relief and specify what allegations apply to each cause of action. Each cause is explicitly named and discusses pertinent factual allegations. Plaintiffs' Amended Complaint offers sufficient notice to Defendants as to what claims are lodged against them—as is evidenced in Defendants' lengthy motions to dismiss, which already begin to address facts as alleged and suggest there are sufficient allegations to respond effectively. Moreover, as the Fourth Circuit has noted,

> [W]hen the complaint conforms to Rule 8(a) and it is neither so vague nor so ambiguous that the defendant cannot reasonably be required to answer, the district court should deny a motion for a more definite statement and require the defendant to bring the case to issue by filing a response within the time provided by the rules. Prompt resort to discovery provides adequate means for ascertaining the facts without delay in maturing the case for trial.

19

Hodgson v. Virginia Baptist Hosp., Inc., 482 F.2d 821, 824 (4th Cir. 1973). Having declared already Plaintiffs' Amended Complaint conforms with the requirements of Rule 8, this Court finds Plaintiffs' Amended Complaint neither so vague nor so ambiguous Defendants would be unable to answer effectively and in a reasonable time period. As a result, Defendants' Motions to Compel a More Definite Statement are DENIED.

**IT IS THEREFORE ORDERED** that Defendants' Motions to Dismiss or in the Alternative Motion for a More Definitive Statement, (Doc. Nos. 15, 18), are DENIED.

**IT IS SO ORDERED.**

Signed: July 16, 2024

_____
Frank D. Whitney
United States District Judge