IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO.: 3:24-cv-00212-FDW-SCR

| | |
|---|---|
| Ty McBride and Mason Lane Entertainment LLC,<br><br>              Plaintiffs,<br><br>v.<br><br>Hank Sacks; Partisan Arts, Inc.; and Selmona LLC,<br><br>              Defendants. | |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND**

**BOTTOM LINE UP FRONT**

Plaintiffs move to add a claim for wrongful interference with prospective economic advantage in the alternative to their claim for wrongful interference with contract. The relevant contract is a long-term master agreement between Mason Lane and third-party NWO. Under it, NWO would pay Mason Lane to provide various services for many concerts over several years at NWO's venue called AMP Ballantyne.

At Plaintiffs' request, the parties deposed NWO representatives on March 26. During the depositions, two NWO representatives testified that they now believe NWO never had a valid master agreement with Mason Lane and, instead, only had a contract for a single concert.

The proposed amendment comes on the heels of the new testimony that—if believed—would support not only dismissal, but also tort claims, Rule 11 sanctions,

and bar grievances against Plaintiffs' counsel. Based on these arguments, Plaintiffs also seek to add more detail to existing allegations.

Plaintiffs meet the standard to amend to conform to the evidence. First, Plaintiffs did not learn about the testimony—and could not have learned about the testimony—until the third-party depositions on March 26. Second, the narrow amendments based on testimony already in the case will not trigger more discovery or prejudice Defendants. The Court should allow Plaintiffs to conform their complaint to evidence supporting an alternative claim for the same damages Plaintiffs already requested sought. *See* Redline of Proposed Amended Complaint, attached as Exhibit A.

## BACKGROUND

**Plaintiffs' Claims.** Plaintiffs sued Hank Sacks[1] alleging he wrongfully interfered with a contract between Mason Lane and a third party, NWO. ECF 12, ¶¶ 30-38. Plaintiffs sued Sacks for defamation too. *Id.*, ¶¶ 39-49. Plaintiffs allege that Sacks—a booking agent for the band Big Head Todd—interfered with Mason Lane's contract with NWO and defamed McBride after Sacks lost his cool during negotiations over a concert at AMP Ballantyne. *Id.*, ¶¶ 21-29.

**The Amphitheater Event Management Agreement.** Plaintiffs' wrongful interference claim centers on a contract that Plaintiffs allege Mason Lane entered with NWO to promote music concerts at NWO's new outdoor venue AMP Ballantyne. *Id.*, ¶¶ 17-19. The primary contract was an Amphitheater Event Management

---

[1] Plaintiffs also sued Partisan Arts, the agency Sacks's represented, and added Sacks's company Selmona as a defendant at Sacks's prior counsel's request.

Agreement. *Id.* The Agreement was a long-term master agreement that governed the parties' relationship from the "start date" on "10/2023" to the "end date" on "Final show agreed upon." *See* the Agreement, Exhibit B.[2] Mason Lane and NWO negotiated the Agreement's terms over several weeks, before reaching a final deal.

**Big Head Todd Event Proposal.** NWO later recognized the parties entered into the Agreement. Exhibit C to the Agreement was an "Event Proposal" that NWO would—and indeed did—sign "[p]ursuant to Section 3.1 and the terms and conditions of that certain Amphitheater Event Management Agreement, dated July 18th, 2023 by and between NWO Amphitheater Management, LLC ('Operator') and Mason Lane Entertainment LLC ('Event Manager')." Exhibit B at MCBRIDE_00767.

A few days after it agreed to the Agreement, NWO signed an Event Proposal for a concert involving Big Head Todd at AMP Ballantyne. *See* Exhibit C.

**Plaintiffs' View of the Agreement.** Based on the signed contracts and the emails negotiating them, McBride alleged the parties negotiated and agreed to all material terms of the Agreement. McBride testified the same way in his deposition.

**NWO's Testimony About the Agreement.** As the parties moved through discovery, Plaintiffs arranged to depose three NWO representatives. Plaintiffs started setting up the depositions in January and, for various reasons, the depositions happened on March 26.

During their depositions, two NWO representatives testified that they believe NWO Amphitheater did not have a binding long-term contract with Mason Lane

---

[2] Plaintiffs redacted non-relevant portions of the Agreement at the NWO's request to avoid sealing Exhibits B and C.

beyond the Big Head Todd show. Instead, they believe NWO would have entered into a new contract or additional multi-part agreement for more concerts with Mason Lane if the first concert went well. Each witness still works for Northwood.

Tim Kurek, a former Northwood employee, testified "the plan was for Ty and Mason Lane to continue to bring shows to the AMP after an initial show," and Northwood representatives "told me Ty would do 30 shows in 2024 at the AMP." *See* Kurek Decl., ¶¶ 7-8, attached as Exhibit D. Whatever the plans, the show never happened because Sacks threatened to blacklist AMP Ballantyne if NWO kept working with McBride.

**Plaintiffs' Original Claim and Alternative Claim.** Based on this new testimony and Defendants' defenses, Plaintiffs ask to add an alternative claim to conform to the evidence. The wrongful interference with prospective economic advantage claim seeks the same damages that Plaintiffs seek under their existing claim for wrongful interference with contract. The alternative claim merely allows Plaintiffs to recover those same damages if a jury believes the Agreement is not a valid contract.

Plaintiffs also ask to add more specific quotes to support their allegations.

Plaintiffs sent Defendants the proposed amendment on April 9—before discovery closed. Plaintiffs requested more information on Defendants' opposition on April 10. Sacks's counsel never responded. Plaintiffs received the NWO deposition transcripts on April 10 and Sacks's deposition transcript on April 18. Plaintiffs now move to amend.

## STANDARD

Under Rule 15(b)(2), "[a] party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue." Fed. R. Civ. P. 15(b)(2); *see Aiken Cnty. v. BSP Div. of Envirotech Corp.*, 866 F.2d 661, 668 (4th Cir. 1989). Consistent with Rule 15, "parties are routinely granted leave to conform their claims to the evidence presented[.]" *Sesco v. Dana World Trade Corp.*, No. 1:01CV43-T, 2002 WL 215015, at *7 (W.D.N.C. Feb. 5, 2002).

While not in the context of a motion to conform to the evidence, "most district courts within the Fourth Circuit" have "adopted a two-part test" that requires a party to "satisfy the requirements of both Rule 16(b) and Rule 15(a), in that order" when a motion to amend comes after the deadline to amend the pleadings. *United States v. Godwin*, 247 F.R.D. 503, 506 (E.D.N.C. 2007).

Good cause under Rule 16 "focuses on the diligence of the party seeking the proposed amendment." *Erdman v. FleetCor Techs., Inc.*, No. 5:16-CV-903-FL, 2019 WL 1507404, at *9 (E.D.N.C. Apr. 5, 2019), aff'd, 807 F. App'x 269 (4th Cir. 2020). Once a party shows good cause, "a motion to amend will only be denied if amendment would be prejudicial to the other party, there has been bad faith by the moving party, or amendment would be futile." *Id.* To that end, Rule 15 mandates that "court[s] should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

# ARGUMENT

## 1. Plaintiffs Diligently Pursued Discovery and Timely Moved to Amend the Pleadings to Conform with New Evidence.

### a. NWO's Expressed Intent is the Basis for the Alternative Claim.

The central difference between Plaintiffs' existing claim and the proposed alternative claim turns on whether the Agreement is a valid contract. A wrongful interference with contract claim requires Plaintiffs to show Sacks wrongfully interfered with "a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person." *United Labs, Inc. v. Kuykendall*, 322 N.C. 643, 661 (1988).

A wrongful interference with prospective economic advantage claim—on the other hand—requires Plaintiffs to show only that Sacks wrongfully "induc[ed] a third party to refrain from entering into a contract with [Plaintiffs] which contract would have ensued but for the interference." *See Walker v. Sloan*, 137 N.C. App. 387, 393 (2000).

The main difference between these two claims turns on whether the parties to the contract—here, Mason Lane on the one hand and NWO on the other hand—had a meeting of the minds on all material terms. The "mutual assent of both parties" is "essential" to contract formation to "establish a meeting of the minds." *Creech v. Melnik*, 347 N.C. 520, 527 (1998). Questions over mutual assent "are questions for the trier of fact." *Id*.

North Carolina courts have recognized that interference with prospective economic advantage can be an alternative claim where the plaintiff cannot prove interference with contract. *Hopkins v. MWR Mgmt. Co.*, No. 15 CVS 697, 2017 WL 2380227, at *20 (N.C. Super. May 31, 2017) ("Although Hopkins's claim for tortious interference with contract as to Turner and NTS must fail, Hopkins's evidence is sufficient to survive summary judgment on his claim for tortious interference with prospective economic advantage with these same two entities.").

Plaintiffs sued for interference with contract based on the signed contracts, the emails negotiating and agreeing to those contracts, and Plaintiffs' belief the parties had mutually assented to all material terms. That evidence all points to "a valid contract" rather than a contract that "would have ensued but for the interference."

Through their discovery, Plaintiffs learned that NWO representatives say the Agreement was not a valid long-term contract with Mason Lane for multiple shows. Plaintiffs learned this information on March 26. This evidence points to a contract that "would have ensued but for the interference" instead of "a valid contract."

> b. *Plaintiffs Worked Diligently to Learn NWO's Side of the Story and Promptly Moved to Add an Alternative Claim.*

Plaintiffs could not have learned this information sooner despite their diligent efforts to complete discovery within the discovery period. Plaintiffs' counsel could not contact NWO before Plaintiffs sued Sacks because NWO may be a defendant or a third-party defendant. After Plaintiffs sued, NWO retained counsel. Plaintiffs contacted NWO's counsel and diligently worked to depose NWO representatives and obtained NWO's consent to contact former NWO employee Tim Kurek.

7

The parties made initial disclosures in September 2024 after the Court denied Defendants' motions to dismiss. Sacks subpoenaed documents from NWO on December 19, 2024. NWO produced documents on February 28, 2025, which Sacks produced to Plaintiffs on March 3.

Anticipating NWO's production, Plaintiffs started working to depose NWO representatives in January. The scheduling process was unnecessarily contentious.[3] When Plaintiffs sought available dates from Sacks's counsel, he responded that "your depositions are worthless because those folks aren't even speaking on behalf of the decision-making entity. So, why would you burn your time and money on worthless depositions? You can't even get that into evidence." *See* Exhibit E at 1.[4]

While this delayed the discovery process, Plaintiffs ultimately scheduled the depositions for March 11.[5] For personal reasons, NWO asked to reschedule to March

---

[3] Sacks's counsel demanded that Plaintiffs notice a Rule 30(b)(6) deposition of NWO instead of deposing the relevant individuals. *See* Exhibit E. While it is not clear why Sacks wanted to pick who Plaintiffs deposed, Plaintiffs learned during the scheduling process that Sacks sent a message to NWO and its lawyer—through his industry contact—that "it's not good press for someone associated with their new venue to be suing an agent." *See* Exhibit F.

[4] Discovery has been unusually difficult and unpleasant. Sacks's emails about discovery have said Plaintiffs' counsel is "lazy," "trying to bully," "being ... even disingenuous with the bullying," seeking discovery for "an improper purpose," being "complicit" in hiding irrelevant documents, "glad to help [Plaintiffs] dig the ditch deeper," "trying to get your client sued," "doing a good job of posturing things in this way," "making [your client's case] worse with shady tactics and hiding thing." *See* Exhibit E at 1, 6; Exhibit G at 1; Exhibit H; Exhibit I at 1. This is just a sample of discovery emails. Efforts to cut through emails and talk on the phone have prompted unpleasant emails. *See* Exhibit E at 2.

[5] Depositions have been similarly disruptive. During a question about emails between the parties, Sacks's counsel instructed his client to "Look at the bottom of 794, Hank. See if that helps you." Sacks Dep. Tr., excerpts attached as Exhibit J, at 73:6-74:2. When Ms. Majestro asked Sacks's lawyer "not talk to the witness other than objecting," Sacks's counsel said "That wasn't a question. That was a suggestion." *Id.* at 74:3-19. Sacks's counsel confirmed he was suggesting an answer to his client during a deposition. *See also id.* at 76:13-23.

8
Case 3:24-cv-00212-FDW-SCR    Document 41    Filed 04/28/25    Page 8 of 13

26. Plaintiffs received the transcripts on April 10. Plaintiffs received Sacks's transcript on April 18 and filed this motion 10 days later.[6]

Plaintiffs diligently prepared the amended complaint and filed this motion after receiving the transcripts. Plaintiffs could not have discovered NWO's position on the Agreement before Plaintiffs sued. And Plaintiffs had no reason to plead an alternative claim based on the evidence outside of NWO's depositions.

While Plaintiffs contend the Agreement is valid, in the event the jury determines it is not, Plaintiffs can pursue a claim for interference with prospective economic advantage. Because Plaintiffs only recently learned of this evidence, they could not have amended to conform to the evidence before the CMO deadline.

Plaintiffs ask the Court for leave to amend to conform to evidence recently learned during discovery.

**2. Plaintiffs' Proposed Amendment is Proper Under Rule 15.**

While the Rule 16 analysis focuses on Plaintiffs' diligence, the Rule 15 analysis focuses primarily on Defendants' alleged prejudice—if any. Under Rule 15, a motion to amend "will only be denied if amendment would be prejudicial to the other party, there has been bad faith by the moving party, or amendment would be futile." *Erdman*, 2019 WL 1507404, at *9.

Asked for their consent, Defendants objected because "Plaintiffs possessed the same knowledge of the factual circumstances at the outset of this case as they have

---

[6] Plaintiffs were prepared to file on Friday, but NWO asked to seal allegations from an email where a promoter reported Sacks's "derogatory comments about [NWO]" to NWO representatives. *See* Exhibit K.

today and had ample opportunity to add that claim." *See* Exhibit L at 3. Defendants also said the Court will deny the motion "given the substantial prejudice that the defendants would face in light of the costs and time spent litigating this case so far." *Id.* Plaintiffs asked for Defendants to elaborate, but Defendants did not. *Id.* at 2.

Defendants cannot show prejudice, bad faith, or futility.

### a. *Defendants Cannot Articulate Any Prejudice.*

Plaintiffs' existing claim and proposed new claim are simply alternative theories with the sole distinction being whether Mason Lane had a contract with NWO or would have had a contract with NWO to perform services for concerts at AMP Ballantyne. The relevant discovery—which Defendants completed after Plaintiffs provided the proposed amended complaint—is not meaningfully different under either claim. And Defendants have not said why it is.

Plaintiffs' amendment does not require Defendants to engage in new preparation and will not add the expense or burden of a more complicated and lengthy trial. *See Shinn v. Greeness*, 218 F.R.D. 478, 489 (M.D.N.C. 2003). The proposed amendment will not change the character of the proof expected at trial. *See id.* And the amendment would not prevent Defendants from preparing their defenses. *Id.* The "absence of prejudice ... will normally warrant granting leave to amend." *Id.* at 487.

Defendants have not met their burden to show actual prejudice they will suffer if the Court allows the parties to conform their pleadings to the evidence.

### b. *Defendants Cannot Show Plaintiffs Acted in Bad Faith.*

Plaintiffs acted in good faith and are filing this Motion promptly after receiving deposition transcripts with new information including from NWO. Plaintiffs simply want to add an alternative claim to conform to new evidence from recent depositions. Doing so will allow Plaintiffs to resolve this case on the merits. *See Shinn*, 218 F.R.D. at 487.

One more point here: Defendants' reliance on Plaintiffs' two prior amendments is not a reason to deny the amendment. Plaintiffs first amended to correct a party name. Plaintiffs then amended because Sacks's former lawyer volunteered that Plaintiffs should add Selmona as a defendant and requested that Plaintiffs remove certain language to help trigger insurance coverage. *See* Exhibits M, N. Plaintiffs complied.

       c.   *Plaintiffs' Proposed Amendment Is Not Frivolous or Futile.*

Plaintiffs' amendment is not "clearly insufficient or frivolous on its face" and therefore is not futile. *Shinn*, 218 F.R.D. at 487, 490.

Plaintiffs expect Sacks will raise—and indeed must raise—frivolousness. On April 4, 2025, Sacks promised to file bar grievances, Rule 11 motions, and lawsuits against Plaintiffs' counsel if Plaintiffs did not dismiss their case. *See* Exhibit L at 7-8. Sacks accused Plaintiffs of "making false accusations aided by counsel and using the legal process for an improper purpose."[7] *See id.* Sacks's counsel said, "our clients are quite upset," and "one of them has a law professor spouse who sees this as you

---

[7] This email came after a series of other emails threatening to sue Plaintiffs. *See* Exhibit E.

and your client grossly misrepresenting reality to the Court."[8] *Id.* He then demanded "dismissal of the current claims with prejudice and a complete waiver and release of everything else up until the ink is dry" to avoid "any pursuit of Rule 11 sanctions, any bar grievance, or any subsequent litigation." *Id.*

Plaintiffs responded to each concern that Sacks raised and attached an affidavit from a witness—Tim Kurek—who Sacks called to defame McBride.[9] *Id.* at 5-7; *see also* Exhibit D. Sacks did not disclose his call with Kurek in discovery until after Plaintiffs served Kurek's declaration. It appears Sacks's counsel threatened the bar grievances, Rule 11 motions, and lawsuits without talking to this key witness first. Plaintiffs have not heard back from Sacks about the threats against Plaintiffs' counsel. That said, Plaintiffs ask this Court to fully address Sacks's arguments so the parties can put that issue to bed and litigate the merits of Plaintiffs' claims.

## CONCLUSION

The Court should grant Plaintiffs' Motion.

April 28, 2025.

/s/ Benjamin S. Chesson
Benjamin S. Chesson, N.C. Bar No. 41923
Anna C. Majestro, N.C. Bar No. 50850
ALLEN, CHESSON & GRIMES PLLC
505 N. Church Street
Charlotte, North Carolina 28202
Telephone: 704.755.6010
bchesson@allenchesson.com
amajestro@allenchesson.com

---

[8] Sacks later testified that he was not aware of this threat. *See* Exhibit J at 17:17-19:15.

[9] The threats have continued. *See* Exhibit O.

*Counsel for Plaintiffs Ty McBride and Mason Lane Entertainment, LLC*

## WORD COUNT CERTIFICATION

I certify that this brief complies with the word count limitation in the Case Management Order.

/s/ Benjamin S. Chesson<br>Benjamin S. Chesson, N.C. Bar # 41923

## ARTIFICIAL INTELLIGENCE CERTIFICATION

I certify the following:

1. No artificial intelligence was employed in doing the research for the preparation of this document, except for such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to the authority provided.

/s/ Benjamin S. Chesson<br>Benjamin S. Chesson, N.C. Bar # 41923